**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**HARVEY PATRICK SHORT,**
         **Plaintiff,**

**v.**                                                **CIVIL ACTION NO. 2:09CV119**

**MICHAEL J. ASTRUE,
COMMISSIONER
OF SOCIAL SECURITY,**
         **Defendant**.

## REPORT AND RECOMMENDATION/OPINION

On October 8, 2009, Plaintiff Harvey Patrick Short ("Plaintiff"), *pro se*, filed a Complaint in this Court pursuant to 42 U.S.C. § 405(g), to review a denial of supplemental security income ("SSI") benefits under the Social Security Act [Docket Entry 1]. On February 2, 2010, Defendant Michael J. Astrue, Commissioner of Social Security ["Defendant"], through his counsel, Helen C. Altmeyer, filed a Motion to Dismiss Plaintiff's Complaint [Docket Entry 21]. On February 9, 2010, Plaintiff filed his Opposition to Motion to Dismiss [Docket Entry 23]. On May 20, 2010, Plaintiff filed with the Court a letter with attachments in support of his Response [Docket Entry 25]. This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

On June 14, 2010, the Court ordered Defendant to file and serve a copy of the letter dated October 19, 2009, from the Appeals Council to Plaintiff; any other written notices to Plaintiff regarding his benefits from May 13, 2009, through October 31, 2009; any certificates of mailing, receipts of mailing, or returned mailings; and any documentation memorializing conversations SSA employees had with Plaintiff after May 13, 2009 [Docket Entry 26]. On July 12, 2010, Defendant responded to the Court's Order. On July 21, 2010, Plaintiff filed a Reply [Docket Entry 30].

The undersigned United States Magistrate Judge finds the issue is not complex and therefore

makes a determination without a hearing.

## I. Findings of Fact

The following facts are not in dispute:

On July 26, 2005, Plaintiff filed an application for supplemental security income ("SSI") benefits. The application was denied at the initial and reconsideration levels. Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held on August 2, 2006, after which, in a Decision dated February 23, 2007, ALJ James P. Toschi found Plaintiff had been disabled since July 26, 2005, the date of his application. ALJ Toschi found Plaintiff had schizophrenia, and that it was a severe impairment. He then found that the severity of Plaintiff's schizophrenia met the criteria of Section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1 ("The Listings"). In particular, the ALJ found that Plaintiff had moderate to marked restriction of activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence or pace; and four or more episodes of decompensation.

Furthermore, the ALJ expressly found:

> Claimant meets the "Part C" criteria of the Listing, with medically documented history of schizophrenia of at least two years duration that has caused more than a minimal limitation of ability to do any activity with symptoms or signs currently attenuated by medication or psychosocial support evidenced by repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase [in] mental demands or change in the environment would be predicted to cause the individual to decompensate; and current history of one or more years inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

At the Conclusion of his Decision, ALJ Toschi noted:

> The claimant has a history of multiple incarcerations and as of the date of the hearing continued to be incarcerated. Therefore, the component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

Plaintiff was advised by an SSA employee in March 2007, that he would not receive any back benefits because he was in jail. Plaintiff states he received this information through a telephone call, while Defendant states Plaintiff "received a determination notice at the time of that decision." (Govt. Exhibit 3). Nevertheless, Defendant admits that the determination notice "incorrectly stated he was not entitled to any payments." Plaintiff had been represented by counsel, but counsel terminated his representation in April 2007.

On May 13, 2009, Plaintiff wrote to the Appeals Council, requesting payment of benefits from July 26, 2005 until March 31, 2008. (Plaintiff's Exhibit to Response). Plaintiff expressly wrote that he was appealing "the denial of back benefits." He explained that he had not been convicted until March 31, 2008, and was held as a pre-trial detainee until that time. He also requested continuing benefits while incarcerated due to his participation in court-approved rehabilitation programs. Plaintiff did not request review of the ALJ's Decision. He expressly requested:

> 1) The payment of back benefits from July 26, 2005 until March 31, 2008, because he was not a "convicted person" in jail, prison, or an institution within the meaning of 42 U.S.C. section 402(x); and

> 2) That he be issued his monthly benefits under the February 23, 2007 decision, because he is currently in court approved rehabilitation programs within the meaning of 42 U.S.C. section 402(x).

On August 7, 2009, Jennifer Wiseman, Claims Representative for the Social Security Administration, spoke to Plaintiff "regarding a previous determination made about his entitlement

to SSI payments." (Docket Entry 29, Government Exhibit 3). Ms. Wiseman's full Declaration is as follows:

1. I spoke to Mr. Harvey Short on August 7, 2009, regarding a previous determination made about his entitlement to SSI payments. The previous determination showed he was entitled to payments for August 2005 and September 2005 but those payments had not been paid to him. Mr. Harvey received a determination notice at the time of that decision but the notice incorrectly stated he was not entitled to any payments. I was able to contact Mr. Harvey at the Huttonsville Correctional Center and advised him he was entitled to payments for August 2005 and September 2005. We discussed the mailing address he wanted to use to receive the payments.

2. On August 7, 2009, the payments for August 2005 and September 2005 were paid to Mr. Harvey. There has been no further contact with him since August 7, 2009.

3. When the payments for August 2005 and September 2005 were paid, a revised notice for the new determination was not provided to Mr. Short.

Plaintiff filed his Complaint in this Court on October 8, 2009, claiming that in March 2007, SSA wrongly denied him the payment of back benefits to which he was entitled from September 14, 2005 until March 31, 2008. Plaintiff claims Defendant and his employees denied him equal protection of the law and due process of law in violation of the 14th Amendment of the United States Constitution by not awarding him those benefits.

## II. DISCUSSION

### A. Contentions of the Parties

Defendant contends this Complaint should be dismissed for lack of jurisdiction, because Plaintiff failed to failed to exhaust his administrative remedies.

Plaintiff contends he did exhaust his administrative remedies because he filed an appeal to the Appeals Council on May 13, 2009, regarding the denial of back benefits. In August 2009, an SSA employee contacted him by telephone and informed him that a decision was made to award him two (2) months payment of back benefits. The only decision he received concerning his appeal was the telephone call in August 2009. Therefore, he had 60 days from August 2009 to file his civil action in federal court. Further, Plaintiff claims he never received a written decision denying the appeal he filed on May 13, 2009.

## B. Jurisdiction

Defendant argues this Court does not have jurisdiction over this matter because Plaintiff failed to exhaust his administrative remedies before filing his Complaint. Judicial review of the Commissioner's final decision is set forth in the Social Security Act, 42 U.S.C. §405, as follows:

> (g) Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the commissioner of social security may allow.
>
> (h) The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . .

The Regulations provide that a claimant must complete a four-step administrative review process within certain time periods to obtain a judicially reviewable "final decision." 20 CFR §§ 404.900(a), 416.1400(a)(2004). This four-step process involves seeking an Initial Determination, Reconsideration, an Administrative Hearing before an Administrative Law Judge, and Appeals

Council review. Id. Section 405(g) of Title 42 of the United States Code authorizes judicial review only of a "final decision of the Commissioner of Social Security made after a hearing." The Commissioner may decline to issue a "final decision" if the claimant failed to exhaust administrative remedies or if the doctrine of res judicata applies. 20 CFR §§ 404.957 (c)(1), (2); 416.1457(c)(1), (2).

In this case the record clearly shows that on February 23, 2007, Plaintiff received a fully favorable decision by an Administrative Law Judge after a hearing. He received a "Notice of Decision" stating, among others:

- I have made the enclosed decision in your case . . . .

- Another office will process the decision and send you a letter about your benefits . . . .

- The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above . . . .

- If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council . . . .

- To file an appeal, you must file your request for review within 60 days from the date you get this notice . . . . The Council will dismiss a late request unless you show you had a good reason for not filing it on time . . . .

- If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

The Appeals Council did not "decide to review" the decision within 60 days of the decision.

Plaintiff did not appeal the ALJ's fully favorable decision within 60 days from the date of the notice. The ALJ's decision of February 23, 2007, therefore became a final decision long before Plaintiff sent his letter to the Appeals Council regarding the issue of back pay benefits. Plaintiff would not have been permitted to file a Complaint with the court at that time because he had not filed a Request for Review with the Appeals Council.

As the ALJ expressly stated in his Decision and in the Notice of Decision, the issue of whether Plaintiff would actually receive benefits and the amount of those benefits would be determined by "another office" referred to by the ALJ as "the component of the Social Security Administration responsible for authorizing supplemental security income."

Plaintiff was advised by an SSA employee in March 2007, that he would not receive any back benefits because he was in jail. Plaintiff states he received this information through a telephone call, while Defendant states Plaintiff "received a determination notice at the time of that decision." (Govt. Exhibit 3). The Regulations define a "determination" as the initial determination or the reconsidered determination. A "decision," on the other hand, is defined as "the decision made by an administrative law judge or the appeals Council." 20 CFR section 404.901. 404.902 described the Administrative Actions that are initial determinations. These include "your entitlement to benefits;" "the amount of your benefit;" "a recomputation of your benefit;" and, in particular, "Nonpayment of your benefits under section 404.468 because of your confinement in a jail, prison, or other penal institution or correctional facility for conviction of a felony." Based on all of the above facts, it is clear to the undersigned that the March 2007 "determination notice" was an "Initial Determination."

More than two years after this Initial Determination, Plaintiff wrote his letter to the Appeals Council. He expressly requested only that he receive the back benefits to which he believed he was

entitled. He expressly stated he was not appealing the fully favorable decision of the ALJ. Three months after Plaintiff wrote his letter to the Appeals Council, he was contacted by SSA, and told the determination notice he had received (in 1997) was incorrect and he was entitled to payments for August and September 2005. SSA states it never provided Plaintiff with "a revised notice for the new determination." This is significant because 404.992 provides:

> When a determination or decision is revised, notice of the revision will be mailed to the parties at their last known address. The notice will state the basis for the revised determination or decision and the effect of the revision. The notice will also inform the parties of the right to further review . . . .
>
> If a determination is revised and the revised determination does not require that your benefits be suspended, reduced, or terminated, the notice will inform you of your right to a hearing before an administrative law judge.

At this point, it seems clear that Plaintiff should have filed a request for review of the revised determination or a request for a hearing before an ALJ regarding the issue of his benefits. He did not do so and therefore did not exhaust his administrative remedies. Whether Plaintiff at the time he was informed of the revised determination should have exhausted by waiting for the Appeals Council's decision on his letter concerning back pay, or should have exhausted by filing a written request for reconsideration or a hearing before an administrative law judge, however, he did fail to exhaust.[1]

---

[1] The undersigned need not address the issue of waiting for the Appeals Council decision as it is a so-called "red herring." While Plaintiff did address his letter to the Appeals Council, the Appeals Council actually should not have considered it at that point in the procedure, and, in fact, did not consider the issue that Plaintiff addressed. The Appeals Council solely found that Plaintiff had provided no reason for the Appeals Council to reverse the ALJ's fully favorable decision. It is inconceivable to the undersigned that the Appeals Council actually even read the letter, as it makes absolutely no sense for Plaintiff to have appealed the fully favorable decision. The Appeals Council makes no mention of payments, benefits, jail, or the determination that he would receive no benefits, and makes no mention of the revised determination that he should have received some benefits. Thus, any failure to exhaust for failure to wait for that decision would have been futile.

Defendant also cannot argue that Plaintiff waited too long to raise the issue of his back benefits, as Defendant waived that objection by responding to the letter. Because the letter was addressed to the Appeals Council; because the telephone call that advised him he would receive benefits was received after that letter; and because Plaintiff never received any written notice or any other correspondence whatsoever from SSA, the undersigned finds it reasonable that he believed he had received his final response from the Appeals Council and needed to file his Complaint in this Court within 60 days.

The Court does not base its jurisdiction on Plaintiff's belief, however, but on Plaintiff's claim in his pleading that the procedures followed by SSA deprived him of due process. An applicant for social security disability benefits has a property interest in those benefits protected by the Fifth Amendment. See Richardson v. Perales, 402 U.S. 389 (1971)(assuming procedural due process protections apply to a social security disability claim hearing). At the minimum, the Due Process Clause requires that an individual is afforded notice and an opportunity to be heard before the deprivation of a protected interest through adjudication. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950). In the context of a social security hearing, due process requires that the proceedings be "full and fair." Perales, supra, at 401. To determine whether such a hearing passes constitutional muster, a court must look to the three factors identified by the Supreme Court in Matthews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

9

entail.

Here there was no hearing regarding Plaintiff's claim of benefits. The undersigned finds the private interest at stake here is potentially great. Although the undersigned has no idea of the amount Plaintiff believes is owed him, if he is correct, the amount could be as much as $13,000.00, a large amount for an individual in his position. The risk of erroneous deprivation is also great, because Plaintiff was never informed, at least in writing, how to appeal the revised decision regarding his benefits. The value of procedural safeguards is great, and, in this case, procedures simply do not appear to have been followed. SSA conceded Plaintiff was not sent a notice of revised determination. Since this is a normal procedure written in both the Regulations and the Social Security Handbook, it clearly would not have caused any additional fiscal or administrative burden.

The undersigned also finds that SSA could have considered Plaintiff's request to the Appeals Council as a Request for Consideration. POMS Section GN 03102.11 C2 provides:

**2. WHAT CONSTITUTES A REQUEST FOR RECONSIDERATION**?

> Any writing or timely submission of additional evidence by the claimant . . . after receipt of a notice of initial determination which clearly implies disagreement with the initial determination constitutes a request for reconsideration. A request for reconsideration can be expressed or implied, but it must be in writing . . . . A writing is the receipt of any documentation, e.g., a letter, facsimile, or submission of additional evidence which clearly implied the recipient's disagreement with the initial determination.

The undersigned finds that by its own policies and procedures, the Commissioner should have considered Plaintiff's letter written to the Appeals Council as a Request for Reconsideration. A Request for Reconsideration was at least implied by Plaintiff's letter and request, "indicat[ing] disagreement with a determination."

POMS Section DI 27030.000 then provides that Claimants have the right to receive written

notification of:

- any determination made on their claims

- the reason(s) for the determination; and

- information on the right to appeal determinations with which they disagree.

Although not raised by either party, the undersigned notes that the ALJ's Decision in 2007 expressly found Plaintiff disabled due solely to schizophrenia. The ALJ found that, at that time, Plaintiff had moderate to marked restriction of activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; and four or more episodes of decompensation. He further met the "Part C" criteria with a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate, and current history of one or more years inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

While Plaintiff was represented by counsel through his administrative hearing, counsel terminated that representation shortly after the hearing Decision was entered. At that point, Plaintiff was a *pro se* claimant with a severe mental disability. In 1980, the Fourth Circuit decided <u>Shrader v. Harris</u>, 631 F.2d 297 (4th Cir. 1980). <u>Shrader</u> presented the following narrow issue:

> [W]hen mental illness precluded a pro se claimant from understanding how to obtain an evidentiary hearing after ex parte denial of his application for benefits, does the summary dismissal on res judicata grounds of his motion for a hearing with respect to a subsequent application deprive that claimant of property without due process of law?

There is no issue of *res judicata* being used against Plaintiff here. Still, there is the possibility that Plaintiff's mental illness precluded him from understanding how to proceed after he was simply told

11

by phone what his revised benefits would be.

For all the above reasons, the undersigned finds Plaintiff was denied his due process rights by the failure to provide him written notice of his revised determination and the manner in which he could appeal it. The undersigned therefore also finds the Court clearly has jurisdiction to hear and decide the Motion to Dismiss:

> The judiciary, and not the Secretary, is the appropriate forum for the resolution of constitutional issues. See Califano v. Sanders, 430 U.S. 99, 109, 97 S. Ct. 980, 986, 51 L.Ed.2d 192 (1977).

Shrader, supra, at 302.

For all the above reasons, the undersigned recommends Defendant's Motion to Dismiss be **DENIED**.

The undersigned United States Magistrate Judge does not have the information available to make a determination regarding the merits of Plaintiff's original Complaint, however. Plaintiff may or may not be entitled to the back benefits he seeks. The undersigned Magistrate Judge feels constrained to follow the Fourth Circuit's finding in Shrader:

> The judiciary, and not the Secretary, is the appropriate forum for the resolution of constitutional issues, See Califano v. Sanders, 430 U.S. 99, 109 97 S. Ct. 980, 986, 51 L.Ed.2d 192 (1977). <u>Nevertheless, the fact-finding process necessary to execute a court's constitutional decision is the province of the Secretary and not the district court.</u>

Shrader, supra, at 302 (emphasis added). The undersigned therefore declines to address the merits of Plaintiff's actual complaint – that he was wrongfully denied benefits while a pretrial detainee and should have been provided benefits until March 2008, when he was actually convicted– as that remains an issue for the administrative agency to decide. The undersigned here simply finds Plaintiff was denied due process in appealing his claim. The undersigned therefore recommends the case be

reversed and remanded to the Commissioner for a hearing before an ALJ regarding Plaintiff's claim for benefits while he was, and remains incarcerated.

### III. RECOMMENDED DECISION

For the reasons above stated, the undersigned recommends "Defendant's Motion to Dismiss Plaintiff's Complaint" [Docket Entry 21] be **DENIED;** the Commissioner's decision be reversed and remanded in accord with the recommendations as stated in this Report and Recommendation/Opinion; and this matter be **DISMISSED** and stricken from the court's docket.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record and Plaintiff, *pro se*, by certified United States Mail, at his last-known address.

Respectfully submitted this 8th day of September, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE